UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CIVIL ACTION NO. 2:19-CV-18-WOB

TIMOTHY RAY LITTLE,                                                                          PLAINTIFF.

V.                          **RECOMMENDED DISPOSITION**

TERRY CARL, *et al.*,                                                                      DEFENDANTS.

*** *** *** ***

Timothy Ray Little ("Little") is a state inmate, currently incarcerated at the Clay County Detention Center in Manchester, Kentucky. Proceeding without a lawyer, Little filed a civil rights complaint, alleging that multiple deputies at the Kenton County Detention Center ("KCDC") assaulted or otherwise used excessive force against him on August 2018. [*See* R. 8 at 2-4; R. 8-1 at 3-5]. The defendants jointly move for summary judgment. [R. 49]. In consideration of the issues presented and for the reasons below, the undersigned recommends that the defendants' motion be granted, and that Little's claims be dismissed with prejudice.

I.

On August 8, 2018, following a state court proceeding, an allegedly unconscious Little was transported to the KCDC after being remanded to custody. Medical records and the deputies' bodycam footage demonstrate that he was evaluated in the sally port by medical staff before KCDC accepted him into custody. During this time, he claims to have been assaulted; specifically, when a nurse – Jessica Razor, LPN – used an ammonia inhalant to arouse him into consciousness. [R. 2 at 5; R. 8 at 2; R. 8-1 at 4]. He alleges that Ms. Razor's

actions caused him skin and nasal passage irritation, which led to a throat infection that went untreated until August 23, 2018. [R. 8 at 2-3]. In addition, Little asserts claims against Deputy Michael Carman, who administered a sternum rub while he was still unresponsive in the van. [*Id.*]. Allegedly, the sternum rub constituted unreasonable and excessive force, causing Little pain and bruising. Following the incident, he filed a grievance. It went unanswered. Little then attempted to get the names of those involved but was unsuccessful. Shortly thereafter, Little claims he was awoken one morning at 4 a.m. by Sergeant Chuck Hopple, with threats of being placed in segregation if he filed another grievance.

The matter is now before the Court on the defendants' joint motion for summary judgment. [R. 49]. In addition to suing Defendant Carman (in both his "individual" and "official" capacities) for using excessive force, Little also sues Sergeant Hopple, in his individual and official capacities, for allegedly threatening to retaliate against him with segregation, after filing the initial grievance in the case. Little has also sued Jailer Terry Carl, Chief Deputy Ed Butler, Major Kim Grigsby and Sergeant Carrie Ray under theories of supervisory liability, in their individual and official capacities, alleging that each failed to intervene and investigate the subject of his grievances. Lastly, while there was an attempt to serve Nurse Razor with a summons and copy of the complaint, it appears that she was never actually served. [*See e.g.*, R. 39-43].

Now upon full briefing, because there is no genuine dispute as to any material fact, it is recommended that summary judgment be granted in the defendants' favor and that this action be dismissed with prejudice.

## II.

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, the nonmoving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine dispute for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). This is so because "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323-24.

"A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the nonmoving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Anderson*, 477 U.S. at 255). The nonmovant "must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted). However, the Court is

under "no … duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.* The following factors bear consideration by a court when entertaining a motion for summary judgment:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

6. As on federal directed verdict motions, the 'scintilla rule' applies, *i.e.,* the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

### A. Official Capacity Claims

First, to the extent that Little seeks to assert claims against the defendants in their "official capacities", the undersigned recommends that summary judgment be granted on these claims against defendants. The Sixth Circuit has made clear that an "official capacity" claim against a state officer is not a claim against the officer arising out of his or her conduct as an employee of the state, but instead is a claim lodged directly against the state agency which employs them. *Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008). Thus, the claims here are against the KCDC. However, KCDC is not subject to suit under § 1983 in federal court, both because a state agency is not a "person" subject to liability under § 1983, and because the Eleventh Amendment deprives federal district courts of subject matter jurisdiction over a claim for money damages against a state and its agencies. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (explaining that state officials sued in their official capacities cannot be sued under § 1983).

### B. Little's § 1983 claim against Deputy Carman

Little's claim of excessive force against Deputy Carman arises under 42 U.S.C. § 1983 for a violation of his Eighth Amendment right against cruel and usual punishment. Section 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of

the United States...." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Mertik v. Blalock*, 983 F.2d 1353, 1359 (6th Cir.1993). To state a valid claim under § 1983, a plaintiff must allege: (1) a deprivation of rights secured by the Constitution or the laws of the United States (2) that was committed by a defendant acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The defendants do not contest the fact that they were acting under the color of state law at the time of the alleged incident. The focus turns on whether Little's constitutional rights were violated.

Prison officials are entitled to deference because they "must make their decisions in haste, under pressure, and frequently without the luxury of a second chance." *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002)). Still, a violation under Eighth Amendment occurs "when their offending conduct reflects an unnecessary and wanton infliction of pain." *Cordell v. McKinney*, 759 F.3d 579, 580 (6th Cir. 2014). "[T]he extent of the injury suffered may suggest whether the use of force was necessary or a wanton infliction of pain." *Shough v. Mgmt. & Training Corp.*, No. 3:15 CV 53, 2018 U.S. Dist. LEXIS 1011, at *14 (S.D. Ohio. Jan 3, 2018) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). But notably, the Eighth Amendment "excludes from constitutional recognition *de minimis* use of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (emphasis added)). And while a serious injury is not required to demonstrate an excessive force claim, "[t]he extent of injury may also provide some indication of the amount of force applied." *Wilkins v. Gaddy*, 559 U.S. 34, 37, 39 (2010) (quoting *Hudson*, 503 U.S. at 7).

In evaluating a claim of excessive force the court considers an objective and subjective component. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013). "The objective component requires that the pain inflicted to be 'sufficiently serious.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). In analyzing the subjective component, the Court considers the state of mind of the prison officials, examining "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Cordell*, 759 F.3d at 580 (citing *Hudson*, 503 U.S. at 7). In addition, the Court considers "such factors as the need for the application of force, the relationship between the need and the amount of force [] used, the extent of the injury inflicted," and "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them." *Whitley*, 475 U.S. at 321 (internal citations omitted).

Under the objective reasonableness component, Defendant Carman contends that the use of force applied on Little (*i.e.*, the sternum rub) was necessary to rouse Little into consciousness and to effectuate order since he was a pretrial detainee. He argues that his use of force "lasted only seconds and ended when Plaintiff responded." [R. 49 at 5, 8]. In fact, he adds that the medical evidence reveals no actual complaints by Little about the relevant use-of-force in question. [*Id.* at 6; *see* R. 49-2]. As such, Carman urges the Court to find that he is entitled to qualified immunity on this claim. Qualified immunity protects government officials from civil suits for damages, so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rieves v. Town of Smyrna, Tennessee*, 959 F.3d 678, 695 (6th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court employs a two-part test to determine

whether the challenged government official is entitled to qualified immunity. *Rieves*, 959 F.3d at 695. It must consider (1) whether the official's conduct violated a constitutional right, and (2) whether that constitutional right was clearly established. *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 864 (6th Cir. June 18, 2020). But, because there is no indication that unreasonable force was applied, the Court finds no need to go through such an analysis.

Here, there is no physical evidence to reflect that Little suffered no more than de minimis physical injuries. Likewise, no evidence suggests that Carman employed any wanton conduct, offending contemporary standards of decency. The bodycam footage reveals Little experienced nothing short of a few seconds of pressure on his chest. No evidence suggests that the force Carman applied stemmed from a sadistic state of mind or was coupled with malicious intent. The evidence suggests that Carman was faced with an unconscious pretrial detainee, carefully attempting to assess the situation while also maintaining order and supervision of the institution. Accordingly, the undersigned recommends that summary judgmen be granted in favor of Carman on this excessive use-of-force claim.

### C. Little's supervisory liability claims

The plaintiff also seeks to hold Jailer Carl, Chief Deputy Ed Butler, Major Kim Grisby, and Sergeant Carrie Ray accountable for failing to intervene in the investigation and circumstances surrounding the sally port incident. He argues that these defendants should thus be held vicariously liable for Carman's violations by virtue of respondeat superior. But notably, however, mere fact of supervisory capacity is not enough. *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981). The law is clear that prison officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

For a supervisor to be held liable under § 1983, he or she must have personal involvement in the alleged unconstitutional conduct in order to be held liable for the conduct about which the plaintiff complains. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). And importantly, here, because the defendants were not personally involved in the incident, they cannot be found liable, since such liability in a § 1983 action hinges upon a defendant official's *personal* involvement in the deprivation of the plaintiff's civil rights. *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003); *Polk County*, 454 U.S. at 325-26.

Little's claims express mere discontent at the surrounding circumstances of the sally port incident. But absent a clear allegation or claim of relief, the Court will not create one. Nor will it "conjure up unpled allegations." *Moorman v. Herrington*, No. 4:08-CV-P127-M, 2009 WL 2020669, at *1 (W.D. Ky. July 9, 2009)(citations omitted). These defendants are entitled to summary judgment.

### D. The retaliation claim against Sergeant Hopple

Finally, Little pursues a retaliation claim against Sergeant Hopple. He contends that Sergeant Hopple retaliated against him with threats of segregation if he filed another grievance. Defendant Hopple argues that because Little failed to utilize the inmate grievance system before filing this suit, his claim failed under the Prison Litigation Reform Act ("PLRA"). Under the PLRA, a plaintiff must exhaust administrative remedies before bringing a lawsuit regarding prison conditions. *See* 42 U.S.C. § 1997(e); KRS § 454.415. "A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017). Before pursuing any civil action, the prisoner is required to comply "with an agency's deadlines and other critical procedural rules" to properly exhaust his administrative remedies. *Woodford v.*

*Ngo*, 548 U.S. 81, 90 (2006). A defendant can prevail on a failure to exhaust defense only if they can demonstrate that "no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox*, 851 F.3d at 590.

As an initial matter, the undersigned notes that there is no evidence to support Little's claim that Sergeant Hopple acted with retribution. The evidence demonstrates that it was Nurse Razor —not Sergeant Hopple— that moved Little into segregation. This action was done in an effort to monitor Little's food and fluid intake. *See* R. 49-3. No evidence suggests that Sergeant Hopple had any input on this decision. *See* R. 49-4. More importantly, however, the evidence demonstrates that Little never pursued a grievance for the alleged retaliation by Defendant Hopple. For this reason, this claim fails under the PLRA and summary judgment should be awarded to Sergeant Hopple on this claim.

### III.

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). Only in such a case is summary judgment warranted. *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010); *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248. This is such a case. For the reasons stated above,

IT IS RECOMMENDED that the Court GRANT the defendants' joint motion for summary judgment [R. 49] and that all of Little's claims against the defendants be DISMISSED with prejudice

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed with the Clerk of the Court within fourteen days of the date of service or further appeal is waived. FED. R. CIV. P. 72(b)(2); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). A general objection that does not "specify the issues of contention" is not enough to satisfy the requirement of written and specific objections. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are not enough to preserve the right of appeal. *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991). A party may respond to another party's objections within fourteen days of being served with a copy of those objections. FED. R. CIV. P. 72(b)(2).

Signed August 6, 2020.



Signed By:
*Edward B. Atkins*  EBA
United States Magistrate Judge